## ORTON, Adm'r, v. CITIZENS' STATE BANK et al.

No. 12886—Opinion Filed April 29, 1924.

1. **Appeal and Error — Review — Trial to Court—Equity Cases.**

In cases of purely equitable cognizance this court is authorized to weigh the evidence and to determine on which side lies the preponderance, and when it is determined that the findings and judgment of the trial court are against the clear weight of the evidence, it is within the province of this court to render or cause to be rendered such judgment as the facts and the law applicable thereto autthorize.

2. **Mortgages—Deeds Intended as Mortgage — Security — Indemnification of Guarantor—Subsisting Debt.**

Where mortgage security for the payment of a debt has been given which is thereafter determined to be insufficient, and a third person who has an interest in seeing the indebtedness discharged agrees with the creditor to guarantee the payment on condition that the debtor conveys the mortgaged premises together with other real estate to the creditor by deeds of general warranty, which is done, and the creditor agrees to release the debtor from personal liability and to look to the guarantor for payment, and the guarantor thereupon begins to realize upon the property conveyed, paying the guaranteed debt from the proceeds and directing and controlling the creditor in the conveyances thereafter executed, and after the payment of all indebtedness of the debtor there remains in the name of the original creditor title to 240 acres of land and some town lots, conveyed by the debtor under the above agreement, such facts show the intention of the parties to be the securing by the debtor of the contract of guaranty. All of the essential elements of an equitable mortgage or deed of trust of property being present, the legal title to the property conveyed by the debtor is merely held in trust by the creditor and its deeds thereto should be canceled after the objects of the trust have been fully attained.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Wagoner County; E. A Summers. Judge.

Action by Paul Orton, as administrator, against Citizens State Bank and T. C. Harrill for the cancellation of certain deeds and for an accounting. Judgment for defendants, and plaintiff brings error. Reversed.

This action was commenced by plaintiff in error filing his petition in the district court of Wagoner county, Okla., April 2, 1919, against the above named defendants to cancel certain conveyances executed by J. A. Orton, deceased, and declaring the same to be mortgages, and for an accounting.

Defendants filed separate answers, each consisting of a general denial and the affirmative allegation that the conveyances in question were intended as absolute deeds executed by J. A. Orton in payment of certain indebtedness owing by him to the defendant bank. Upon the issues thus formed trial was had to the court August 5, 1920, resulting in a judgment in favor of the defendants. The facts shown by the record are substantially abstracted in the brief of defendants thus:

On April 26, 1917, J. A Orton owned the following real estate: 160 acres in Beaver county, 80 acres in Pottawatomie county, 160 acres in Wagoner county, several lots in the negro section of Wagoner, and a flour and corn mill on other lots in Wagoner. Orton was in bad health. He wished to go west, but was seriously involved financially and all his real estate was heavily mortgaged, except the lots in the negro section of Wagoner. The mill property was subject to two mortgages to one S. E. Carter, one for $4,950 and the other for $500. Carter's $4,950 mortgage also covered the Beaver county 160 and was a second lien upon the Pottawatomie county 80, which was subject to prior mortgage of $200 to one Hubbard. The 160 acres in Wagoner county was subject to a mortgage to one John C. Guinn for $4,450. Orton's mind was unimpaired. No fraud is alleged in the petition. In addition to the two Carter mortgages on the mill property, the defendant bank also held a third mortgage as security for the payment of Orton's note for $2,625.00, dated April 8, 1916, and due six months thereafter. Carter's suit to foreclose his mortgages against the mill property was pending and Orton feared that the mill would not sell for enough to pay the amount due Carter and that a deficiency judgment would go over against him. He

was anxious to avoid a personal judgment hanging over against him after foreclosure of the property. He had previously given his friend, Grant Eby, a written power of attorney to handle his property for him. Harrill was a small stockholder in the bank at that time and was personally liable to the bank for the payment of the Orton note. This came about when the old stockholders of the bank sold out to new stockholders and the latter had the privilege of turning back the Orton note and demanding cash therefor. In order to bring about a contract between Orton and the bank, Harrill guaranteed payment of the Orton note. Under these circumstances, the bank, acting through the witness, J. A. Smith, its cashier and vice-president, was unwilling to cancel its third lien security, but in consideration of Harrill's guaranty and of the absolute conveyance of all of Orton's property to the bank it was willing to surrender its rights to a personal or deficiency judgment against Orton. It was anticipated by those concerned that there would be a deficiency if the mill sold at forced sale. Under these circumstances, on April 26, 1917, J. A. Orton, who died August 29, 1918, conveyed by absolute and unconditional warranty deeds all his property to the bank and contemporaneously therewith entered into written agreement with the bank (C. M. p. 54) whereby the bank agreed that it would "not hold a personal or deficiency judgment against him on one certain note of $2,625 dated April 8. 1916."

From the judgment so rendered in favor of the defendants, after unsuccessful motion for new trial, plaintiff in error has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

W. O. Rittenhouse and John C. Graves, for plaintiff in error.

James Cosgrove, for defendants in error.

Opinion by LOGSDON, C. All of the assignments of error are grouped together and argued under the proposition "that the trial court erred in rendering judgment in favor of the defendants and against the plaintiff."

Since the only question involved in this proceeding, as viewed by this court, is whether the findings of fact and conclusions of law by the trial court are sustained by the evidence, a determination of this question must be decisive of this proceeding. The findings of fact made by the trial court so far as material here read as follows:

"That said conveyance was made absolutely and unconditionally and was only qualified to the extent indicated in said collateral written contract attached to said petition as Exhibit D.

"That there was no agreement, oral or otherwise, between said J. A. Orton and the defendants, or either of them, whereby, said premises or any portion thereof, were conveyed in trust or for any fiduciary purpose.

"That no personal obligation subsisted in favor of the defendants, or either of them against said J. A. Orton after the execution and delivery of said conveyances and after the execution and delivery of said collateral contract attached to the petition as Exhibit D."

This being an equitable proceeding, this court is authorized to weigh the evidence, and if the findings of fact made by the trial court are clearly against the weight of the evidence, to render or cause to be rendered such judgment as should have been rendered in the trial court. Voris v. Robbins, 52 Okla. 671, 153 Pac. 120; Haynes v. Gaines, 76 Okla. 268, 185 Pac. 74; Mobley v. Rhoades, 77 Okla. 64, 186 Pac. 230; Hogan v. Grimes, 78 Okla. 184, 189 Pac. 353; Wyatt v. Shackleford, 79 Okla. 325, 193 Pac. 427; Tracy v. Norvell, 81 Okla. 94, 196 Pac. 929.

In this case there is practically no conflict in the evidence as to the situation of the parties and the circumstances under which the instruments in controversy were executed. Harrill and his associates had sold the bank sometime prior to this transaction to J. A. Smith and his associates with the understanding that certain notes included in the assets of the bank might be returned to the sellers within a certain time if found to be worthless and the new owners of the bank should receive the face value of such worthless notes in cash. In this class of doubtful paper was included the note of J. A. Orton for $2,625, secured by a third mortgage on the mill property described as certain lots in blocks 242 and 243 in the city of Wagoner. At the time of the transaction made the basis of this action the bank nor Mr. Harrill neither held any other or additional security for the payment of this note. J. A. Orton had shortly prior to this time executed deed of trust or power of attorney in favor of one Eby covering all of the property owned by Orton, and which was thereafter conveyed to the bank, for the purpose of enabling Eby to handle and dispose of said property for the use and benefit of Orton in paying off the various mortgages and debts against said property and preserving to Orton his

equities therein. With matters in this attitude, Orton was recalled from a trip which he had commenced for the benefit of his health, and it was represented to him that unless he executed conveyances to the bank covering this property and cancelled his conveyances thereof to Eby, that Harrill and his associates would be heavy losers. Orton was not willing to convey the property direct to Harrill, and the bank was not willing to release Orton from his personal liability on the note unless it had other security for its payment. It was thereupon agreed between Harrill and the bank that Harrill should guarantee the payment of the note provided Orton would convey all of his property to the bank. Smith, the cashier of the bank, and Harrill both testified, in substance, that while the legal title to the property after execution of the deeds by Orton was in the bank, it was conveyed by the bank only upon the direction of Harrill and to the persons designated by him. It is further shown by their testimony that the note continued as an existing indebtedness in favor of the bank and against Harrill, and that the only effect of the collateral agreement executed by the bank was to relieve Orton from the possibility of a deficiency judgment being taken against him upon foreclosure of the mortgage. And the mortgage was afterwards foreclosed. It is further shown by the testimony of Smith and Harrill that in the various transactions thereafter by which Harrill handled and disposed of Orton's property, the title to all property, taken in exchange therefor was vested in Harrill and not in the bank. The conclusion is therefore inescapable that Harrill and not the bank was the person beneficially interested in the legal title conveyed by Orton. His interest grew out of his contract as guarantor, and after such guaranty contract was entered into the bank had no further direct interest in the mortgage security, while by reason of the transaction Harrill became indemnified to the extent of Orton's equity in all of the other property against liability or loss by reason of his special contract as guarantor, as well as against liability and loss under the original agreement between him and his associates and Smith and his associates. The consideration of all of these matters is authorized by Comp. Stat. 1921, sec. 5050, as follows:

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

The record is silent as to whether Harrill's contract as guarantor to the bank was written or oral, but this is immaterial under the second subdivision of sec. 5127, Comp. Stat. 1921, which reads:

"A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor and need not be in writing: * * *

"Second, where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety."

It is further shown by the testimony that at some time after these conveyances by Orton, presumably after the sale of the mill property, Harrill paid the Orton note to the bank, and both Smith and Harrill testified that the bank now holds no obligation against Orton or his estate. After Harrill had been handling the Orton properties for some time, and after he had sold the mill property and the 160 acres of land in Wagoner county, Orton returned to Wagoner and while there went to the state of Arkansas, according to the testimony of Harrill, and inspected certain property there which Harrill had taken in exchange when he sold the Wagoner county lands.

It is very clear from a consideration of all the testimony shown in the record that the conveyances by Orton to the bank were intended by all the parties as security to Harrill for his contract of guaranty, and that the bank held merely the naked legal title to the properties without any beneficial interest therein whatever. This being the case it is equally clear that Harrill could derive no beneficial interest from legal title vested in the bank except upon the theory that the bank held the legal title in trust for his benefit It is nowhere claimed that it was the intention of Orton to convey this property to Harrill, but it is evident that it was his intention to indemnify Harrill against loss under his contract as guarantor. That this intention has reached fruition is shown in the record. Harrill has realized on Orton's property at least to the extent of paying off all the mortgages against it, and the legal titles to the lands in Beaver and Pottawatomie counties and to the lots in Wagoner in block 334 are held by the bank free and clear of incumbrances.

Upon a consideration of the entire record in this case it must be held that all of the essential elements necessary to constitute a deed, absolute on its face, an equitable mortgage or deed of trust are shown to be present. There was a debt in existence which was inadequately secured. Its pay-

ment was guaranteed by one already secondarily liable thereon. The guarantor was indemnified by the debtor conveying additional assets as security. The creditor accepted the guaranty, and thereafter looked to the indemnified guarantor for payment. The debt was thereafter discharged by such indemnified guarantor from proceeds of a part of the property conveyed for his benefit. As was said in Worley v. Carter, 30 Okla. 642, 121 Pac. 669:

"The real intention of the parties, either as shown upon the face of the writing, or as disclosed by extrinsic evidence, must govern in equity."

To the same effect, see: Farrow v. Works, 39 Okla. 734, 136 Pac. 739; Vorhis v. Robbins, 52 Okla. 681, 153 Pac. 120; Messer v. Carroll, 60 Okla. 90, 159 Pac. 362; Hall v. Russell, 72 Okla. 47, 178 Pac. 679; Haynes v. Gaines, 76 Okla. 268, 185 Pac. 74; McKean v. McLeod, 81 Okla. 77, 196 Pac. 935.

It is, therefore, concluded that the findings of fact made by the trial court are against the clear weight of the evidence, and that the conclusions of law based thereon are erroneous. It is, therefore, recommended that this cause be reversed with directions to the trial court to vacate the judgment rendered herein and to enter a decree in favor of the plaintiff decreeing the deeds in controversy to be equitable mortgages, and that an accounting be had in said trial court between the parties, and for such further proceedings as may be necessary and proper to conform to the views herein expressed.

By the Court: It is so ordered