## ORTON, Adm'r, v. CITIZENS STATE BANK et al.

No. 19075. Opinion Filed Sept. 17, 1929.

Rehearing Denied Dec. 10, 1929.

Application to File Second Petition for Rehearing Denied Sept. 9, 1930.

Commissioners' Opinion, Division No. 2.

P. E. Reed and John H. Scriba, for plaintiff in error.

Watts & Broaddus, for defendants in error.

DIFFENDAFFER, C. This is a second appeal of this cause. The action was commenced April 2, 1919, by plaintiff in error, and was for the cancellation of certain deeds and for an accounting. Judgment in the first trial was for defendants. Plaintiff appealed, and by an opinion of this court, 99 Okla. 80, 225 Pac. 899, the judgment was reversed, decreeing the deeds in controversy to be equitable mortgages, and remanding the cause for an accounting between the parties. The deeds involved 160 acres of land in Beaver county; 80 acres in Pottawatomie county, 160 acres in Wagoner county, several lots in the city of Wagoner, and a

flour and corn mill located on other lots in Wagoner. The facts as to the transfer of these lands are stated in Orton v. Citizens State Bank et al., 99 Okla. 80, 225 Pac. 899, and will not be restated.

At the time of the former trial, the mill property and the 160 acres in Wagoner county have been disposed of to third parties. The title to the other lots in Wagoner, the 160 acres in Beaver county, and the 80 acres in Pottawatomie county was still held by defendants. The deeds were made by Orton to the Citizens State Bank, not for the benefit of the bank, but to indemnify defendant Harrill upon his guaranty of an indebtedness of $2,625 of Orton's to the bank. After the conveyances were made, the Citizens State Bank was consolidated with the First State Bank of Wagoner, and continued in that name until about December 21, 1922, when it was adjudicated insolvent and its assets were taken over by the State Bank Commissioner. This was prior to the decision in the former trial. The mandate in the former appeal was filed in the district court and spread of record May 16, 1924. August 15, 1924, plaintiff filed his motion praying for an order directing defendants to reconvey to the estate of J. A. Orton the Beaver county land and the Pottawatomie county land, and to direct defendants, within 20 days, to file a complete accounting. August 25, 1924, the court entered an order directing defendants to make and file a full report and accounting of their acts and proceedings, but made no order directing the reconveyance of the land. This order was not complied with, and on December 10, 1924, plaintiff filed a motion for judgment against defendants for $21,000 in accordance with the prayer in his original petition, and for an order for reconveyance of the land.

No action was taken on this motion until April 16, 1927, when plaintiff filed what he termed an "amended motion for an order to comply with mandate." By this amended motion, plaintiff set out all the proceedings had to that date, and alleged that defendant had never complied with the order for an accounting, and further alleged that pending the former appeal, the judge of the district court, who was the trial judge in the first trial of this cause, made and entered an order authorizing O. B. Mothersead, the then Bank Commissioner, to convey by deed to defendant T. C. Harrill the 80 acres of land in Pottawatomie county: that, in keeping with said order, the Bank Commissioner, about November 16, 1923, executed a deed conveying said land to defendant Harrill. He readopts all the allegations of his original motion, and prayed for an order setting aside the order

authorizing the transfer of the Pottawatomie county land to Harrill, and prays for the cancellation of the deed made thereunder, and further prays for an order directing the Bank Commissioner to comply with the mandate of the Supreme Court by executing proper deeds of conveyance, conveying the 80 acres in Pottawatomie county, the 160 acres in Beaver county, and the lots in Wagoner, which had not been disposed of to the heirs of J. A. Orton, deceased. By this amended motion, he renews his prayer of judgment for $21,000, which he claimed as profits made by defendant Harrill from the mill property and the 160 acres of Wagoner county, after the payment of all indebtedness from J. A. Orton to the bank or Harrill.

Thereafter, defendant T. C. Harrill filed an amended answer, to which he atached an unverified statement purporting to show in detail divers trades and transactions connected with the Orton property, which he alleges were all made in good faith, and which he alleges culminated in a final loss to him in the sum of $23,456.60 in property and money furnished and advanced by him from time to time in making the several trades. He alleges, in substance, that he thought and believed at all times that the deeds made by Orton were absolute conveyances, and that not until the judgment of the Supreme Court in the former appeal did he think or believe that same was an equitable mortgage; that after the trial in the district court, and while the case was pending on appeal in the Supreme Court, he sold and conveyed in good faith the Pottawatomie county land to one N. V. Leonard for the sum of $800, which he alleges was at that time the fair and reasonable value thereof; that prior thereto he had paid out $531.88 thereon in order to discharge the taxes and the $200 mortgage against said land; that likewise he had conveyed the Beaver county land to O. B. Mothersead, Bank Commissioner, against him; that the only property left in his hands was the lots in Wagoner, upon which he alleged he had paid $75 taxes, which sum he alleged was more than the fair market value of the lots. He prayed that plaintiff take nothing, and for judgment against the administrator in the sum of $23,-455.60, and for such other and further relief as equity and good conscience afforded.

Plaintiff replied by general denial, admitting only the correctness of certain items in the account relating to the Wagoner county farm land. He then alleged that defendant Harrill had traded and handled the mill property in such a way that he had received property and money therefrom of the value of $27,150.24 over and above the amount neces-

sary to pay the indebtedness of J. A. Orton to the bank. He alleged that from the Wagoner county farm, defendant Harrill had realized in cash the sum of $4,461.38 clear and above the indebtedness against said land and all expenses in making the trades in connection therewith; that by reason thereof, he alleges, defendant is indebted to plaintiff, as the administrator of the estate of J. A. Orton, in the sum of $31,611.92. He then alleges that after defendant Harrill had so disposed of the mill property and the Wagoner county farm, he made certain other trades so commingled with his own property that it was impossible for plaintiff to follow said property, so that he elects to declare and demand an accounting for the value of the Wagoner county land and the mill property as determined from the proceeds therefrom in the first sale and exchange thereof and to claim and demand the 160 acres in Beavevr county and the 80 acres in Pottawatomie county. He then assails the transfer of the 80 acres of land in Pottawatomie county by Harrill to N. V. Leonard, whom he alleged is a brother-in-law to defendant Harrill, for a purported consideration of $800 as fraudulent and made for the purpose and in an attempt to circumvent and thwart, if possible, an adverse decision of the Supreme Court, should one be rendered, and with a willful and malicious intent to cheat and defraud plaintiff and the heirs of J. A. Orton. He also assails the alleged transfer of the Beaver county land to the Bank Commissioner, and denies that any such transaction was ever had, or that Mothersead ever received a deed thereto from Harrill, or that defendant Harrill ever received any money therefor.

The issues as thus joined were tried to the court, resulting in findings by the trial court, in substance: That the property was deeded to the Citizens State Bank in trust, for the purpose of indemnifying defendant Harrill on account of his guaranty of payment of a note to the bank for $2,625; that the bank made a deal or had an understanding with Harrill; that the property was to be Harrill's, and that the bank held it subject to Harrill's order; that defendant Harrill so believed and handled the property as he saw fit; that Harrill believed that he was the lawful owner of the property, subject only to the incumbrances that were against it, and handled the property as he saw fit for his own use and benefit; that he converted the property and is liable for the value of the equities in the property he handled and disposed of and which is now beyond the reach of the court; that while this case was pending in the Supreme Court on appeal from the former judgment, the court finds, de-

fendant Harrill deeded 80 acres of the land in Pottawatomie county to N. V. Leonard; that the court has no authority to pass upon the validity of this transfer for the reason that Leonard is not a party to this suit; that the deeds executed to the bank to the Beaver county land and the Pottawatomie county land and the lots in the city of Wagoner should be canceled as between the parties to this suit and title thereto quieted and vested in plaintiff; that defendant Harrill paid out $75 taxes on the lots in the city of Wagoner, and that he paid out $531.88 on the Pottawatomie county land and $225 taxes on the Beaver county land; that the value of the mill property was equal to the incumbrances against it, and that there was no equity in the mill property; that there was $34.90 equity in the Wagoner county farm land; that defendant Harrill had paid out $793.98, for which he was entitled to judgment, and for costs.

Judgment was rendered against plaintiff and in favor of defendant Harrill for $793, making same a lien against plaintiff's interest in the land, and quieting title to the Beaver county land, the Pottawatomie county land, the lots in the city of Wagoner in plaintiff as against defendants, and canceling the deeds made by J. A. Orton, deceased, to the Citizens State Bank, covering said lands, subject to the lien in favor of defendant Harrill for the $793.98 rendered in his favor, and for all costs to date.

Both parties excepted to the findings and judgment, and filed motions for new trial, which were overruled and plaintiff filed petition in error and defendant Harrill filed a cross-petition in error.

The petition in error of plaintiff contains seven assignments of error, but all except the fifth and sixth are based upon the findings, and are to the effect that the findings and judgment are contrary to the law and the evidence, and may be considered together. The fifth and sixth assignments are: That the court admitted incompetent evidence by defendant and rejected competent and material evidence offered by plaintiff. These two assignments are not presented or urged in the briefs and will therefore be treated as abandoned.

It is first contended that the court erred in its finding that the value of the mill property was equal to the incumbrances against it, and that there was no equity therein.

The evidence shows that shortly after the deed was given by Orton to the Citizens State Bank, defendant Harrill traded the mill property to L. M. Warmack. The in-

cumbrances against the mill property were: First mortgage $4,950, second mortgage $500, and third mortgage $2,625, a total of $8,075. Harrill received for it in the trade 80 acres of land in Little River county, Ark., some city property in Ashdown, Ark., the amount not being shown, against which there were incumbrances of $4,300, 40 acres of land in McCurtain county, and a note for $4,000 secured by a third mortgage on the mill property, Warmack assuming the first and second mortgage on the mill property, amounting to $5,450, the bank releasing its third mortgage in the sum of $2,625. Thus, for the property and release of the bank's mortgage, Warmack gave the Arkansas land, the Ashdown property, subject to a mortgage of $4,300, and the McCurtain county 40 acres, and his note for $4,000. The value of the McCurtain county 40 acres was shown to be $400. The value of the Ashdown property is not shown, but there is some evidence tending to show that one house and lot was sold for $800, and that the balance was worth not to exceed the incumbrance against it. The value of the 80 acres is not shown. It is not shown whether the Warmack note of $4,000 was good or not, it having been turned back to him in a subsequent trade. However, it is shown that the mill property was sold again to J. W. Martin, some time prior to the first trial for $7,100 cash and a note for $4,000, which note proved to be worthless. So, from the entire record, we conclude that the finding of the court as to the value of the mill property was in substantial accord with the evidence.

It is next contended that the finding of the court that the value of the equity in the Wagoner county 160 acres was $34.90 is contrary to the evidence.

The record discloses that shortly after the land was deeded to the bank, defendant Harrill traded the Wagoner county farm together with 30 acres of his own land, which he valued at $1,050, to one J. A. Cayton, and received therefor 194 acres of land, and a one-story house and six acres of land, all in Arkansas. The trade was that all land should be free of incumbrance. Harrill paid off the indebtedness against the Wagoner county land, which, including interest and taxes paid, amounted to $4,812.88. Cayton paid off all incumbrance against the Arkansas property, so that Harrill received it clear of incumbrance. He immediately placed a mortgage thereon for $5,000, out of which he reimbursed himself for the $4,812.88 paid out by him to clear the Wagoner county land. He then sold one-half interest in the Arkansas land for $2,500, subject to the $5,000 mortgage. This land was then sold for $15,000 cash out of which the $5,000 mortgage,

accrued interest of $400, $35 expense, $750 commission, and a commission note of $750, together with $1,000 other expenses, were paid, leaving net proceeds of $7,065, which was divided equally between Harrill and the owner of the other one-half interest, being $3,532.50 to Mr. Harrill. This, added to the $2,500, for which he sold the one-half interest, amounted to $6,032.50, from which we deduct $1,050, the value of Harrill's 30 acres which he put into the deal, and $500 commission paid on the first trade, which left Harrill a net profit of $4,482.50 from the Wagoner county farm.

Mr. Harrill in his evidence admits the net profit to be $4,461.38. He testified as follows:

"Q. And that means you got and had $4,461.38? A. Yes, sir. Q. And you had that as soon as the Cayton land was sold and the trade closed up? The Court: That amount was what? Mr. Reed: $4,461.38. Q. And that was the net profit from the Orcon 160 acres of land in Wagoner county? A. Yes, sir."

To this perhaps should be added the sum of $178.88, shown to have been the excess derived from the $5,000 loan obtained on the Arkansas land over the amount necessary to clear the Wagoner county land, which was shown to be $4,821.12.

There is considerable evidence in the record by expert witnesses to the effect that the value of the Wagoner county land was about $25 to $30 per acre. It was apparently this evidence which the court followed in fixing the value of the Wagoner county land, wholly ignoring the more substantial evidence, showing what it actually brought to Mr. Harrill. We are, therefore, forced to the conclusion that the finding of the court that the value of the equity in this land was but $34.90 is clearly against the weight of the evidence, and not justified by the record. This equity must have been a very substantial one, since the record discloses that Mr. Harrill received net to him therefrom the sum of at least $4,461.38. We think the evidence clearly shows that the value of the equity in the Wagoner county land was $4,400. There is considerable other evidence in the record to support this conclusion.

It is next urged that the court erred in its findings that defendant Harrill had paid out $75 taxes on the Wagoner county land, $225 taxes on the Beaver county land, and $531.88 on the Pottawatomie county land.

As to the first item Mr. Harrill testified that he paid the $75 taxes on the Wagoner city lots and this is nowhere disputed.

The evidence as to the payment of the

$225 taxes on the Beaver county land is very weak and inconclusive. Mr. Harrill testified that he sent his brother-in-law up there and he paid taxes on the land to that amount. He did not produce the tax receipts, but testified he had them somewhere. It is strenuously contended by plaintiff in his brief that none of the taxes were paid, yet he produced no evidence to that effect. This was a matter that could have been easily proved by the record, but neither side saw fit to introduce any record evidence. From the record, we are unable to say that this finding was not supported by sufficient evidence.

As to the payment of the $531.88 on the Pottawatomie county land, the evidence is all to the effect that this was paid by Harrill, and is not disputed, and the finding of the court was in accord with the evidence. But as to the right of defendant Harrill to be rembursed for this entire amount, which the trial court apparently allowed him, we think the trial court was in error. The record discloses that while the former appeal was pending, defendant Harrill, after obtaining the deed from the Bank Commissioner to the Pottawatomie county land, sold it to his brother-in-law for $800. There is evidence in the record, which is not disputed, that this was the fair market value of the land, and that the sale was made in good faith. As to the good faith of the transaction, we pass no opinion, and leave that matter open, as plaintiff may yet desire to proceed against N. V. Leonard for the recovery of this land. But from defendant's own evidence, he received $800 for this land, and paid out but $531.88, leaving a surplus in his hands of $268.12. This amount the trial court wholly failed to take into consideration. We think defendant is liable to plaintiff for this amount.

The first three assignments of error in the cross-petition in error of defendant Harrill are: That the findings and judgment of the court are contrary to the law and the evidence. The fourth and fifth are that the court admitted incompetent evidence offered by plaintiff and rejected certain competent evidence offered by defendant. These two assignments are not presented or urged in the brief, and will be treated as abandoned. The remaining assignments, together with the first three, are presented under three propositions. It is first asserted that, under the trial court's theory of conversion and its findings and judgment as to the value of the property converted, defendant is entitled to judgment reimbursing him for his payment of Orton's note, for which defendant was guarantor. We think we have,

shown, and the trial court so found and held, that the value of the mill property was equal to the incumbrances against it, which included the amount of Orton's note, which Harrill paid. In this way, defendant was clearly reimbursed out of the proceeds of the mill property, and this contention is without merit.

It is next asserted that the trial court erred in finding and adjudging that defendant was guilty of conversion of the Wagoner county land.

The trial court in its findings said:

"The court therefore holds that he (defendant Harrill) converted the property and is liable for the value of the equities in the property which he handled and disposed of and which are now beyond the reach of the court."

We deem it not necessary to determine the question whether or not there was, strictly speaking, a conversion. The holding, as a whole, is to the effect that defendant should be held to account for the value of the equities over and above the amount necessary to pay off the indebtedness and liens against the same. This is substantially what the court undertook to do, and we think properly so, except as to his erroneous findings as to the value thereof.

The statement as to a conversion, if wrong, we think is immaterial. After a sufficient amount from the disposition of the property covered by the "equitable mortgage" was realized, the remainder should have been at once returned to Orton or his administrator. Upon failure so to do, defendant should, in justice, be held liable for the value of that which he disposed of and placed beyond the reach of the court.

The third contention is that the trial court erred in canceling, as between the parties to the action, the deeds to the Beaver county and Pottawatomie county lands. There is considerable evidence in the record tending to show that after the mill property was disposed of defendant traded the remainder of the Ashdown property and the 80 acres of land in Little River county, Ark., for a hotel in Wagoner, putting in some $8,300 of his own money, and thereafter traded the hotel for equities in other property in Arkansas, and again disposing of this land in such a way as to finally lose some $23,000, and therefore defendant contends that he was never reimbursed for the money he paid the bank on Orton's note. The Ashdown property put into this trade was shown to be of no value over and above the $4,300 incumbrance against it. The value of the 80 acres in Little River county, which went

into the trade, is not shown, but it is apparent that this value was conparatively small, since defendant himself testified that the value of the hotel was little if any above the incumbrances thereon, and the $8,300 which he put into the trade. The loss, if any actual loss was had, seems to have arisen by reason of later trades, involving several pieces of property, which defendant owned and traded in the deals aggregating some $18,750. Whether this was actual value or paper value, we cannot determine, but it is evident that the Ashdown property and the 80 acres in Little River county, Ark., had little, if anything, to do with these trades, and that the losses, if any, are entirely too remote to be charged against the Orton property. The deed from Harrill to the Bank Commissioner for the Beaver county land had never been placed of record, and it shows that the Bank Commissioner had never accepted it for value. We think there was no error in canceling the deed as between the parties.

As to the 80 acres in Pottawatomie county, the record clearly discloses that plaintiff would be entitled to the return thereof, if still in the hands of Harrill, upon repayment by plaintiff of the $531.88. But Harrill chose to sell it to his brother-in-law for $800, nothwithstanding he knew that plaintiff was claiming it. It may or may not now be beyond the reach of plaintiff, but defendant Harrill certainly could claim no right to it, and we think there was no error in canceling the deed as between the parties, thus leaving the question of title open as between plaintiff and Harrill's grantee. But certainly defendant Harrill should be held to account for the $268.12, which he received therefor over and above what he paid out on the land.

Upon the whole record, we think the cross-petition in error of defendant is without merit.

Plaintiff insists that his judgment should be for some $31,000. but he bases his claims largely upon the consideration placed in the several deeds dealing with the property, rather than the actual value thereof, and in his pleadings elects to demand only an accounting for the mill property and the Wagoner county land in the first sale and exchange thereof.

From the whole record, we think the judgment in favor of defendant Harrill, in the sum of $793.98, should be, and is hereby reversed and set aside, and that judgment should be, and is hereby, granted in favor of plaintiff and against defendant T. C. Harrill in the sum of $4,400, the value of the equity in the Wagoner county land, and the

further sum of $268.12, the amount of the excess received from the Pottawatomie county land over the amount paid out thereon, less $300 taxes paid on the Wagoner lots and Beaver county land, or a total of $4,368.12, and that the judgment of the trial court in all other respects should be affirmed.

BENNETT, HERR, JEFFREY, and HALL, Commissioners, concur.

By the Court: It is so ordered.

---

### On Rehearing.
#### Opinion Filed Dec. 10, 1929.

PER CURIAM. Plaintiff in error has filed a petition for rehearing, which is in effect a petition to modify the opinion and judgment in certain particulars. He first requests that the opinion be modified so as to show the rate of interest and fix the date from which the amount awarded him shall draw interest.

The judgment rendered in favor of plaintiff in error is silent as to interest; and, in this respect, we think the request should be granted, and the rate of interest and the date from which it should run should be fixed. The judgment like any other judgment, where the rate of interest is not fixed by contract, should draw simple interest at the rate of six per cent. per annum.

This being an action wherein a final judgment or decree of court is required to fix and establish the amount of plaintiff's recovery, the judgment can draw interest only from the date of the final judgment or decree.

We are asked to further modify the opinion to the extent of holding that the doctrine or rule of lis pendens applies to the 80 acres of land in Pottawatomie county and quiet the title thereto in plaintiff as against Leonard, to whom Harrill deeded this 80 acres of land while this suit was pending. It is suggested that the legal title thereto being in the Citizens State Bank, and the equitable title thereto being in plaintiff, Harrill could not acquire a valid title thereto from the bank and then convey good title to Leonard, all while this action was pending. This would unquestionably be true had the suit been brought in Pottawatomie county, the county in which the 80 acres in question is located. But such is not the case, as the suit was instituted in Wagoner county, wherein other lands in controversy were situated. The situation now arising could easily have been avoided by plaintiff

in error by having Leonard made a party defendant in the trial court after the cause was remanded in the former appeal, and after the transfer to Leonard was made. This was not done, hence the difficulty in attempting to pass upon Leonard's rights in and to the land in this appeal.

. Plaintiff in error, to support this contention that the doctrine of lis pendens applies as to the land in Pottawatomie county, relies on section 260, C. O. S. 1921, which provides:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title, but such notice shall be of no avail unless the summons be served or the first publication made within 60 days after the filing of the petition."

The suit having been instituted in Wagoner county, and the statutes not providing for the filing of lis pendens notice in counties other than the one wherein the suit is instituted, we think the pendency of the action in Wagoner county would not of itself operate as notice to third persons as to that part of the land situated in Pottawatomie county until a certified copy of the judgment is recorded in the office of the county clerk of Pottawatomie county as provided in section 261, C. O. S. 1921, which provides:

"When any part of real property, the subject-matter of an action, is situated in any other county or counties than the one in which the action is brought, a certified copy of the judgment in such action must be recorded in the office of the register of deeds of such other county or counties, before it shall operate therein as notice, so as to charge third persons, as provided in the preceding section. It shall operate as such notice, without record, in the county where it is rendered."

The general rule governing the situation here is stated in 38 C. J. p. 53, as follows:

"Usually, the lis pendens statutes require filing of notice in the county where the land is situated, and where a tract of land is partly situated in two counties, the lis pendens must be filed in both counties in order to affect the whole tract. Similarly, some statutes require the filing of a copy of the proceedings in the county where the land lies. In the absence of statutes allowing the filing of a notice of lis pendens in counties other than the one where the action is brought, the action, in order to affect lands purchased or incumbered during its pendency, must be brought in the county where the land is situated."

The above statutory provisions are almost identical with the statutory provisions of Ohio. The only substantial difference is, that, in this state, it is provided: "When the petition has been filed, the action is pending," etc.; and in Ohio (Page's Ann. Gen. Code, sec. 11300) it is provided: "When the summons has been served or publication made, the action is pending," etc.

A question almost identical, with the one here was involved in Benton v. Shafer, 47 Ohio St. 117, 24 N. E. 197, wherein it was held:

"The doctrine of lis pendens does not apply, unless the court has acquired, in some manner, jurisdiction of the subject-matter involved in the suit. Where, therefore, an action to recover real property, which is not an entire tract situate in more than one county, but a separate tract lying wholly in one county, the action is not brought in the county where the subject of the action is located, a bona fide purchaser of the property for a valuable consideration, without actual notice, and residing in the county where the property is situated, will not be charged with constructive notice of the pendency of such action at the time of his purchase so as to prevent his acquiring a valid interest in the property."

Our attention is not called to a case in this state holding that the doctrine of lis pendens applies to lands other than those in the county where the action is brought, where such lands are not a part of one contiguous tract lying in the county where the suit was brought.

To so hold would, in effect, be to require prospective purchasers of lands anywhere within the state to examine the records of every county in the state to find whether a suit is pending that would affect the title. Such, we think, is not the intent of the statute. In this connection, the court in Benton v. Shafer, supra, said:

"If the purchaser of a tract of land situated entirely in the county of his domicile who has no actual notice or information of any judicial proceedings in any county in reference to such land, searches the record of the county where the land is located, and finds no pending proceedings, judgment liens or other incumbrances affecting the title to the same, it is not the intent of the statute that such purchaser shall be compelled to examine the records of the courts of every county in the state to find whether a suit is pending that would affect the title."

We, therefore, conclude that the contention of plaintiff in error in this particular cannot be upheld, and we cannot say, as a matter of law, that Lenoard had constructive no-

tice of plaintiff's claim when the 80 acres of land in Pottawatomie county was conveyed to him. The question as to whether or not he had actual notice can be settled only in an action wherein he is made a party. Plaintiff in error having failed to make Leonard a party to this action, we cannot determine his rights in the land in this appeal.

Plaintiff further suggests that by the opinion as written, he is allowed the sum of $268.12 out of the purported sale price of the Pottawatomie county land, something he did not ask for, and which he did not want, since he was seeking to recover the land itself. He insists that Harrill be not charged or held accountable to him for the $268.12, which Harrill says he received for such land in excess of the taxes and mortgage liens paid by him. If plaintiff in error should accept this $268.12, it might interfere with him in whatever proceeding he might see fit to yet bring to recover or regain the land from Leonard. To his suggestion that the judgment be modified in this respect, we are inclined to agree.

That part of the opinion by which plaintiff in error is given judgment against defendant in error Harrill is modified and judgment rendered in favor of plaintiff in error against defendant in error. T. C. Harrill, for the sum of $4,400, the value of the equity in the Wagoner county land as herein found, less the sum of $300, paid by Harrill as taxes on the Wagoner lots and the Beaver county land, or a total sum of $4,100, with simple interest at the rate of six per cent. per annum from the date hereof.

Defendant in error, T. C. Harrill, has also filed a petition for rehearing, wherein he challenges the correctness of the finding of this court as to the value of the equity in the Wagoner county farm.

Upon careful consideration of the question presented, we adhere to the finding and conclusions as stated in the opinion.

It is further contended by defendant in error that the opinion fails to give him credit for the $2,625 indebtedness of J. A. Orton to the bank which he guaranteed and which was, together with interest thereon, paid by him.

This amount is taken into consideration and defendant in error is given credit therefor in handling and selling the mill property. This was substantially the holding of the trial court, and we think the conclusion reached in the opinion on this question is correct.

The original opinion, except as herein modified, is adhered to, and the petition of plaintiff in error for rehearing is denied, except as to the modifications above indicated.

The petition of defendant in error for a rehearing is denied.