### TRACY et al. v. NORVELL.

No. 11810—Opinion Filed March 29, 1921.

(Syllabus.)

1. **Compromise and Settlement — Binding Effect.**

Voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise voluntarily entered into must stand and be enforced, although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for a decision.

2. **Appeal and Error — Equity Case — Sufficiency of Evidence.**

In an equitable action the judgment of the trial court will not be set aside unless it is clearly against the weight of the evidence.

3. **Compromise and Settlement — Action to Cancel—Judgment—Evidence.**

Record examined, and held, that the judgment of the trial court is not against the weight of the evidence.

Error from District Court, Tulsa County; Geo. W. Clark, Assigned Judge.

Action by Nola Childers Tracy, a minor, by her husband and next friend, Forrest R. Tracy, and Nola Childers Tracy, against Woodson E. Norvell to cancel compromise agreement and for other relief. Judgment

for defendant, and plaintiffs bring error. Affirmed.

R. C. Allen and Davidson & Williams, for plaintiffs in error.

Alpha L. Burns, Harvey C. Goodloe, Edward E. Harvey, Errol L. Joyce, and Woodson E. Norvell, for defendant in error.

NICHOLSON, J.  The plaintiff in error Nola Childers Tracy, who was plaintiff below, is a citizen of the Osage Tribe of Indians, and inherited from her father, William Childers, who was a citizen of the Creek Tribe of Indians, the following described lands lying and situate in Tulsa county, to wit: the south half of the northwest quarter of the northeast quarter, and lots 5 and 6, in section 11, and the east half of the northeast quarter of section 12, township 19 north, range 12 east of the Indian Meridian, containing 160 acres, more or less.  Lee Clinton and Daniel B. Horsley were, in the year 1914, duly appointed guardians of the estate of the plaintiff and continued as such guardians until such plaintiff arrived at her majority.  The defendant in error, defendant below, was the attorney for said guardians and the estate of said plaintiff.  Said plaintiff attained the age of 18 years on the 25th day of December, 1917. On the 7th day of January, 1918, said plaintiff, as party of the first part, and said Lee Clinton, Daniel B. Horsley, and said defendant, as parties of the second part, entered into a contract in writing by the terms of which said plaintiff constituted and appointed said defendant and said Clinton and Horsley her agents for the purpose of surveying and platting said lands into lots and as an addition to the city of Tulsa, and marketing said lots.

Under the terms of said contract the plaintiff agreed to pay all the expenses of grading, platting, advertising, and conducting the sale of said lots, the expense of abstracts and revenue stamps· and the expense of equipping and maintaining offices in the city of Tulsa, together with the salary of one person to act in the capacity of stenographer and book-keeper. It was further agreed that said plaintiff should have the privilege of selecting from said lands so platted the equivalent of four blocks for her own use, and should not be liable for any commissions thereon, and that said defendant and said Clinton and Horsley should receive a net commission of 10 per cent. of the gross amount received from the sale of each lot.

It was further agreed that said defendant and Clinton and Horsley should exercise the powers granted them jointly, acting as a board by majority vote; should adopt rules for their government and keep a complete record of their proceedings which should be open to the inspection of plaintiff at all times.

Proceeding under said contract, said defendant and said Clinton and Horsley sold between January 10th and September 1, 1918, lots for which the parties received about $100,000.  On or about September 1, 1918, the plaintiff, without the consent of the defendant, closed the offices in which the business had been conducted, and refused to further perform said contract, and refused to allow said defendant to participate in the performance thereof.  Thereafter, the defendant brought suit in the district court of Tulsa county against said plaintiff and Lee Clinton and Daniel B. Horsley, seeking to recover the sum of $110,000 for legal services rendered to·said guardians and the estate of said plaintiff.

On December 21, 1918, a contract of settlement was entered into by and between the plaintiff and defendant herein, by the terms of which, in consideration of the dismissal with prejudice of the aforementioned suit and the relinquishment by said defendant of all claims which he had or might have against the plaintiff, her guardians, or her estate, the plaintiff agreed to convey by good and sufficient warranty deed to said defendant 36 lots or parcels of land situated in what is known as Horsley Hill addition to the city of Tulsa, and agreed to indorse and deliver to said defendant a certain promissory note for the sum of $10,000, executed by E. Constantin and Constantin Refining Company, payable to the order ·of said plaintiff.  In said contract it was agreed that 18 of said lots were received and accepted by the defendant in exchange for his relinquishment of his rights under the contract bearing date of January 7, 1918, and the other 16 lots and said note for $10,000 were in payment for all legal services rendered.

Said lots were conveyed and said note indorsed and delivered and said action for $110,000 dismissed with prejudice in accordance with the terms of said contract. Afterwards, and on November 7, 1919, this action was brought by plaintiff, seeking to set aside said compromise settlement, and praying that the defendant be required to make full disclosure and discovery of the matters in plaintiff's petition mentioned, and a complete accounting of all funds received by him from the sale of the lots conveyed to him, and the note so indorsed and delivered to him, and for judgment against said defendant for such sum or sums received, and for cancellation of the conveyance covering the unsold portion of said lots, and for general relief.

The plaintiff predicates her action upon alleged fraud of the defendant in procuring the contract of January 7, 1918, and also in procuring the settlement of date December 21, 1918. The defendant in his answer and cross-petition denied the fraud and prayed that a certain notice placed of record by the plaintiff, seeking to cloud the title to certain lots deeded to him under said contract be canceled, and for all proper relief.

The trial court, at the request of the parties, made findings of fact and conclusions of law, as follows:

"Nola Childers Tracy, one of the plaintiffs herein, inherited 160 acres of land in this county as an heir of the estate of her father, a Creek Indian. She was at that time a minor about 14 years of age. Clinton and Horsley were appointed guardians of her estate. Miss Childers attained her majority on December 25, 1917. Prior to that time she had no business experience, but had attended school at Pawhuska, three years in California, and one year in Missouri. She was registered on the rolls as a three-quarter blood Indian. On June 18, 1917, she married Forrest R. Tracy, who was at that time a minor, and who is now 20 years of age. He was granted his majority rights, and immediately after Mrs. Nola Childers Tracy attained her majority she and her husband entered into a contract with her guardians and the defendant under the terms of which the latter were to plat and place upon the market for sale the 160 acres of land hereinbefore mentioned. Under this contract sales aggregating over $100,000 were made, and the defendant received his share of the commissions to which he was entitled under the contract, amounting to about $3,500.

"There had been much litigation between her guardians and Mr. Leonard, who was claiming to be the rightful guardian under some proceedings had in the Creek county court, and was pretending to act as such, and his acts were contested by Mr. Norvell on behalf of the guardians and their ward, and in that litigation the principal, if not the only, question involved was as to who was the legal guardian and entitled to act as such. The litigation was eventually decided in favor of Mr. Norvell's clients. He made a claim against Mrs. Tracy which included charges for the services so rendered, and an estrangement between the plaintiffs and Mr. Norvell resulted. After futile attempts were made to effect a settlement, Mr. Norvell brought suit to recover the amount claimed to be due him. Mr. and Mrs. Tracy employed counsel to represent them in this controversy, who advised them that they could defeat the action which had theretofore been brought against them by Mr. Norvell, and could also by legal proceedings secure a cancellation of the contract under which Clinton, Horsley, and Norvell were acting as agents for the sale of the lots, but

that it would take a year or two to do so, and that while the matter might be compromised, they advised against such action. Mrs. Tracy left the entire matter in the hands of her husband, and under his advice the matters in dispute between her and Mr. Norvell were finally adjusted and compromised in accordance with the terms of the contract which was executed on December 21, 1918.

"Mr. Tracy had no experience in business affairs, except in the reading and construing of contracts, prior to the settlement between his wife and Mr. Norvell on December 21, 1918.

"On or about August 8, 1919, Mrs. Tracy, by a duly acknowledged instrument which was filed in the office of the county clerk and recorded in book 278 at pages 230, 231, gave notice 'to all persons concerned' that she claimed to be the owner of certain real estate therein described and would, as soon as the pleadings could be prepared, institute proceedings to cancel a certain deed covering said real estate to Mr. Norvell, which real estate was covered by the contract of settlement between them.

"No misrepresentations as to either the facts or of the law applicable thereto were made to the plaintiffs, or either of them, by Mr. Norvell or by anyone who assumed to represent him in any of these transactions in the settlement of their differences.

"Mr. Tracy, while a young man in years, was to all appearances thoroughly competent to represent his wife in the business in which she was interested, and with which he had been entrusted.

"Conclusions of Law.

"Under the facts disclosed by the evidence, and as here found, the plaintiffs have failed to establish a cause of action, and the defendant is entitled to a judgment canceling the notice of Mrs. Tracy which is of record in the office of the county clerk of Tulsa county, Oklahoma, in book 278 at pages 230, 231, and for his costs."

We gather from reading the briefs of counsel for plaintiffs in error that it is their theory that the relation of attorney and client either existed or had just ended at the time the contracts under consideration were made, and that it makes no difference whether the defendant actually practiced fraud or not in procuring the settlement in question, the law imposing fraud upon his act. But we are unable to see that the argument advanced has any application to the facts in this case. The contract of date January 7, 1918, simply constituted the defendant and Lee Clinton and Daniel B. Horsley the agents of the plaintiff for the sale of the lots, and after the sum of approximately $100,000 had been received from the sale of the lots, and on or about September 1, 1918, the plaintiff terminated the

agency in so far as the defendant was concerned

This contract by its terms was to terminate on December 25, 1920, unless sooner ended by consent in writing of all the parties, and, as the defendant did not consent to its termination before said date, the plaintiff might have been liable to him for damages for the breach of the contract by her. The defendant did not sue the plaintiff for damages for breach of said contract, but did sue her and her guardians for the sum of $110,000 attorney's fee, and this was the action that was settled and dismissed with prejudice, and it is in this settlement and the contract of date December 21, 1918, evidencing the same that we must look for fraud.

The evidence of the plaintiff and her husband, Forrest I. Tracy, shows that the plaintiff employed Blake & Rosenstein, attorneys at the Tulsa bar, as her attorneys to defend this action and to bring suit against the defendant and Clinton and Horsley to cancel the contract of January 7, 1918; that they had conferences with these attorneys in regard to said action and were advised fully of their rights, but that plaintiff and her husband wanted to effect a settlement of said action and of all differences between the plaintiff and defendant if it were possible to do so, and, without consulting their attorneys in regard to said settlement, plaintiff and her husband negotiated said settlement through A. J. Rudd, who was, or had been, in the employ of the parties as book-keeper, and was friendly to both the plaintiff and defendant. Forrest I. Tracy, acting for plaintiff, requested Rudd to effect a compromise of the defendant's suit and also procure a settlement of all differences between them in regard to the contract of January 7, 1918, and Rudd assisted in making said settlement. The plaintiff and her husband and the defendant were unfriendly; and the defendant never at any time proposed such settlement either directly or indirectly, and never at any time talked to the plaintiff or her husband in regard to the settlement, was not present when the settlement contract was signed by the plaintiff, but was represented by his attorneys, and there is no evidence indicating fraud, misrepresentation, concealment, or other misleading incident by the defendant or his attorneys, but it appears that the proposition of settlement was initiated by the plaintiff, and that she and her husband desired to obtain a settlement, and that the compromise was voluntarily entered into by her, and it further appears that such compromise was based upon a sufficient consideration; therefore it must stand and be enforced. Kiefer Oil & Gas Co. v. McDougal, 229 Fed. 933, A. & E. Ann.

Cas. 1916D, 343; Fisher v. May (3 Bibb. 448, Ky.) 5 Am. Dec. 626; Sango et al. v. Parks et al., 44 Okla. 223, 143 Pac. 1158; Harn v. Hare, 48 Okla. 3, 151 Pac. 615; St. L. & S. F. R. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103.

The trial court found that no misrepresentations as to either the facts or the law applicable thereto were made to the plaintiff by the defendant or by anyone who assumed to represent him in any of the transactions in the settlement of their differences, and further found that Mr. Tracy, while a young man in years, was to all appearances thoroughly competent to represent his wife, the plaintiff, in the business in which she was interested and with which he had been intrusted.

It has been repeatedly held by this court that in an equity case, where the judgment of the trial court is not against the weight of the evidence, it will be sustained. Hogan v. Grimes, 78 Okla. 184, 189 Pac. 353; Robinson v. Potterff, 78 Okla. 202, 189 Pac. 744; Parker v. Tomm, 78 Okla. 103, 188 Pac. 1074; Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235; Van Winkle v. Henkle, 77 Okla. 84, 186 Pac. 942; Clinton v Miller, 77 Okla. 173, 186 Pac. 932; Day v. Keechi Oil & Gas Co., 72 Oklahoma, 180 Pac. 366; Haynes v. Gaines, 76 Okla. 268, 185 Pac. 74.

We have carefully reviewed the evidence, and find that the same reasonably tends to support the findings and judgment of the trial court; therefore, the judgment of the district court of Tulsa county is affirmed.

PITCHFORD, V. C. J., and JOHNSON, McNEILL, and ELTING, JJ., concur.