## TULSA INTERSTATE PETROLEUM CO. v. ALLISON et al.

No. 15484—Opinion Filed July 14, 1925.

Rehearing Denied Sept. 22, 1925.

**1. Compromise and Settlement—Binding Effect Where Parties on Same Footing.**

Voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge, concerning the circumstances involving these rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they thus voluntarily enter must stand and be enforced, although the final issue may be different from that which was anticipated and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision.

**2. Fraud — Misrepresentations Between Parties with Same Knowledge.**

Statements or misrepresentations between the parties having equal knowledge about the subject-matter will not constitute actionable fraud.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; A. C. Hunt, Judge.

Action by the Tulsa Interstate Petroleum Company, a corporation, against Mary Edna Allison et al. Judgment for defendants, and plaintiff brings error. Affirmed.

Horace Speed, A. A. Hatch, and Woodson E. Norvell, for plaintiff in error.

Randolph, Haver & Shirk and H. M. Gray, for defendants in error.

Opinion by THOMPSON, C. This appeal is from a judgment of the district court of Tulsa county by the Tulsa Interstate Petroleum Company, a corporation, plaintiff in error, plaintiff below, against Mary Edna Allison and W. O. Allison, defendants in error, defendants below, dismissing the petition of plaintiff in error and rendering judgment in favor of defendants in error for certain real estate in an addition to the city of Tulsa. The parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

The part of the record necessary to a decision in this case is that the plaintiff, a corporation, claims that it, as successor to the Tulsa Interstate Petroleum Company, organized as an express trust, is entitled to the west three acres of Harter's second subdivision to the city of Tulsa; that the same was purchased by W. O. Allison while trustee, manager and president of the said express trust, with money belonging to the said express trust, taking title thereto in the name of Mary Edna Killion, an employe of said express trust, who afterwards became his wife, and asked that the same be declared to be held in trust for the plaintiff by the said Mary Edna Allison, nee Killion, and for judgment for $2,366.66, the reasonable rental value of the property during the time the same was held in the manner above set out.

Mary Edna Allison, nee Killion, answered by way of general denial and admitted the purchase of the property from one J. P. Harter and wife on the 17th day of May, 1920, and denied that the purchase price was paid out of the money belonging to the express trust, but alleged the same was paid for with the money of her codefendant, W. O. Allison, and claimed that she was holding the same in trust for her codefendant, W. O. Allison. The defendant W. O. Allison, in his separate answer, admitted the purchase of the property and the taking of title in the name of his codefendant, then Mary Edna Killion, afterwards Allison, and denied that the consideration paid therefor was out of the funds of the express trust, but that the same was purchased with his own funds and that said property was held by Mary Edna Allison in trust for him. For his other and further answer, he alleged that he was deposed as manager, trustee and president of the company, prior to the 10th day of June, 1920, and that one R. J. Dickson became president, and that the acting trustees and R. J. Dickson claimed that the defendant held certain property belonging to the corporation purchased with

its monies and claimed title to the identical property described in this action; that on the 16th day of June, 1920, the said express trust settled the difficulties between him and the trustees of said express trust, and executed to him a complete written release and discharge of all obligations and claims of any and every character against him upon his turning over to said express trust certain properties as a consideration for said settlement, which constituted a complete settlement, complete accord and satisfaction by and between him and said express trust, and that by virtue of which the plaintiff was estopped from claiming any right, title or interest in the premises described. A copy of the alleged release, satisfaction and claim was attached to and made a part of his answer.

The plaintiff replied by way of general denial to the separate answer of Mary Edna Allison, and by its reply to the separate answer of W. O. Allison admitted that by virtue of a resolution passed by the board of trustees of said express trust on the 14th day of June, 1920, it entered into the agreement set up in the answer of defendant W. O. Allison, and that on the 15th day of June, 1920, said W. O. Allison made an assignment to it of certain stocks and properties held in his name, not including the title to the property involved in this action, and that at the time of the delivery of the release, claimed by defendant, plaintiff was not advised and did not know that the property involved in this action was purchased with the funds of this company, or that W. O. Allison claimed any interest therein, and believing, as represented by W. O. Allison, that he had complied fully with all the conditions and terms of the written agreement, as set forth in the resolution, the officers of the company, on the 16th day of June, 1920, executed the release and satisfaction pleaded by the defendant. Upon these issues the cause was tried to the court without the intervention of a jury.

The plaintiff at the beginning of the trial asked that separate findings of fact and conclusions of law be made by the court, and on the 6th day of October, 1923, after evidence was completed and argument heard, the cause was taken under advisement by the court, both parties filing requests for separate findings of fact and conclusions of law, and on the 12th day of October, 1923, the court refused to follow the findings submitted by both sides, stating that he would have to make findings of his own, but that the general finding would be for the defendants, to which the plaintiff reserved its exception, and on the

5th day of November, 1923, the court filed its own separate findings of fact and conclusions of law, copies of which were mailed to the attorneys for both parties to this action.

Theretofore, on the 15th day of October, 1923, the plaintiff had filed its motion for new trial, one of the grounds of which was that the court had failed to make separate findings of fact and conclusions of law as requested. On the 9th day of November, 1923, attorneys for plaintiff filed exceptions to the findings of fact and conclusions of law, and on the 19th day of November, 1923. attorneys for plaintiff filed supplemental and additional causes in support of its motion for new trial, and on the 4th day of January, 1924, the court overruled the motion and supplemental motion for new trial and exceptions to the findings of fact and conclusions of law, and on the same day and date the journal entry of the judgment of the court was filed, dismissing the petition of the plaintiff and finding that the property was held by Mary Edna Allison, nee Killion, in trust for W. O. Allison, and that he was the equitable owner of the property; that the affidavit of R. J. Dickson made on the 10th day of June, 1920, filed in the office of the county clerk of Tulsa county, Okla., be canceled, and that the plaintiff be enjoined from claiming any right, title or interest in the property, from which judgment the plaintiff appeals to this court for review.

Attorneys for plaintiff in their brief assign 23 grounds of error, but, in our view of the case, there are only two questions raised necessary to a decision of this case. The first is, Did the trial court err as claimed by plaintiff's counsel in not properly making special findings of fact and conclusions of law, as requested by the plaintiff; second, did the court err in finding and holding, that by reason of the settlement between the plaintiff and W. O. Allison and the execution of the release by the plaintiff to W. O. Allison, it concluded the rights of the plaintiff to the property involved in this action? Both of these propositions can be disposed of upon the record and the written and record evidence.

Upon the first proposition, the record discloses that after the evidence was concluded and arguments heard, on the 6th day of October, 1923, the court took the case under advisement, both parties having filed requests for separate findings of fact and conclusions of law, and on the 12th day of October, 1923, the record shows the following:

"Now, in this case of Tulsa Interstate Petroleum Company against Mary Edna Allison, the court has gone over the findings submitted and I will have to change these some; in other words, I will have to make some findings of my own, but I have decided that my general finding will be for the defendants in the case."

Mr. Norvell, one of the attorneys for plaintiff, then made this record:

"Well, we except to the findings of fact and conclusions of law of the court. Of course we would like to know just what those findings are, because we might want some exceptions at that time, and we might want to request some findings that the court did not make."

To which the court replied:

"That's the reason I say I will give you copies of the findings."

Thereafter, on the 5th day of November, 1923, the court filed in the office of the court clerk of Tulsa county, Okla., his findings of fact and conclusions of law. Thus, the record shows that the court did make his special findings of fact and conclusions of law, as he indicated he would do when he announced that his general finding would be in favor of the defendants and, thereafter, the plaintiff filed its additional grounds for new trial and its exceptions to the court's findings of fact and conclusions of law, and the final journal entry, or judgment, in this cause was not filed until the 4th day of January, 1924, at the time the motion and supplemental motion for new trial and the exceptions to the findings of fact and conclusions of law filed by the plaintiff were overruled by the court, and, while, in the journal entry the date of October 12, 1923, appears as the date the court rendered its opinion, yet the record, above quoted, shows that he still had under advisement and for determination the findings of fact and conclusions of law that he intended to make and file in the cause, which he did make and file on the fifth day of November, thereafter.

We are of the opinion that the record clearly shows that it was not the intention of the court to render its judgment in this cause on the 12th day of October, as the language used by the court, above quoted, shows conclusively that it was not intended that any final judgment would be rendered by him until he had first prepared his own findings of fact and conclusions of law independently of the requested findings of fact and conclusions of law filed with him by the respective parties in this case; and we are further of the opinion that there is no irregularity in this respect and that

the plaintiff has no legal grounds for complaint upon this proposition, as it was accorded every legal right that it had and it exercised every legal right by filing its additional grounds for new trial and its exceptions to the court's separate findings of fact and conclusions of law, and we are of the opinion that no reversible error can properly be predicated upon this ground urged by attorneys for plaintiff for reversal of this cause.

Upon the second proposition, we find from the record and record evidence in this cause, that R. J. Dickson became president of the express trust, the predecessor of the plaintiff in this case, on June 8, 1920, upon which date W. O. Allison was deposed as president, manager and trustee of the company; that on the 10th day of June, two days thereafter, R. J. Dickson, the then president, prepared, signed, acknowledged and filed with the county clerk of Tulsa county the following affidavit:

"To the Public:

"State of Oklahoma, County of Tulsa—ss.

"R. J. Dickson, being first duly sworn, deposes and says: That he is the president of Tulsa Interstate Petroleum Company of Tulsa, and has authoriy to make this affidavit in its behalf; that said Tulsa Interstate Petroleum Company claims to be the owner of certain real estate situated in the city and county of Tulsa, and described as follows, to wit: The west three acres of lot 18 of Harter's second subdivision to the city of Tulsa, according to the recorded plat thereof; that neither W. O. Allison, Walter Olds, nor A. S. Kerr, nor either of them, nor any one purporting to act on behalf of either of them, has any authority to act on behalf of said Tulsa Interstate Petroleum Company, or to execute on its behalf any instruments whatsoever affecting in any manner whatsoever any rights said Tulsa Interstate Petroleum Company may have in and to said real estate; and all persons are hereby notified that said Tulsa Interstate Petroleum Company will not be bound by the acts of said W. O. Allison, Walter Olds, and A. S. Kerr, in any way purporting to affect the title of said Tulsa Interstate Petroleum Company in and to said real estate.
                    "R. J. Dickson.

"Subscribed and sworn to before me this 10th day of June, 1920.
              "Mary Tate, Notary Public."

In said affidavit, it appears that with full authority from the company, he made a record claim to the ownership of the very property involved in this transaction, and gave notice by said affidavit to the public that the Tulsa Interstate Petroleum Company claimed the title to said property.

Thereafter, a call and waiver of notice of a meeting of the board of trustees of the company was issued by the same R. J. Dickson and W. H. Smith and Fred H. Inman, trustees, for the express purpose "to consider plans and terms for the effecting of a settlement between W. O. Allison and the company." And, that on the said 14th day of June, 1920, just four days after the filing of the affidavit, heretofore quoted in this opinion, at said call meeting the following resolution was adopted, to wit:

"That, whereas, certain differences have arisen between the Tulsa Interstate Petroleum Company, acting by and through its present board of trustees, with W. O. Allison, the former president and manager of said company; and,

"Whereas, it is the desire of said board of trustees to effect a settlement of said differences with the said W. O. Allison; and

"Whereas, W. O. Allison has executed, or is about to execute, a transfer and assignment to the company of all shares of stock and rights standing in his name, or belonging to him, in and pertaining to the Scottish Oil, Gas & Refining Company, the Dixie Girl Petroleum Company, the Tulsa Interstate Petroleum Company and the Red Diamond Oil Company, together with all oil and gas mining leases and other property standing in his name, or in the name of others claiming by, through or under him, but which as a matter of fact, belong to and are the property of the Tulsa Interstate Petroleum Company;

"Now, therefore, be it resolved by the board of trustees of the Tulsa Interstate Petroleum Company, that upon receipt of executed transfers and assignments of the property referred to above from W. O. Allison to the Tulsa Interstate Petroleum Company, W. O. Allison shall be released and relieved of any and all liability to said Tulsa Interstate Petroleum Company whatsoever."

The record further shows that on the 16th day of June, 1920, in accordance with the resolution above quoted, a settlement was effected between W. O. Allison and the Tulsa Interstate Petroleum Company, an express trust, and a written release and satisfaction of the claims of said company was executed and delivered to W. O. Allison, which written release is as follows, to wit:

"Release and Satisfaction of Claim.

"Know All Men by These Presents: That the Tulsa Interstate Petroleum Company, an express trust, of Tulsa, Okla., acting by and through its proper officers and in accordance with the terms of a trustees' resolution passed at a special meeting of the trustees on the 14th day of June, A. D. 1920,

and in consideration of W. O. Allison having complied fully with the requirements and provisions of said resolution, said compliance and performance being hereby acknowledged.

"Now, therefore, Tulsa Interstate Petroleum Company does hereby and forever exonerate, release and relieve the said W. O. Allison of Tulsa, Okla., from any personal liability or obligation of any kind whatsoever in favor of said Tulsa Interstate Petroleum Company.

"And the said Tulsa Interstate Petroleum Company does hereby acknowledge that the said W. O. Allison has delivered and turned over to said Tulsa Interstate Petroleum Company, all property, effects, and things of value of every description whatsoever, which is the property of said Tulsa Interstate Petroleum Company.

"And for the same consideration Tulsa Interstate Petroleum Company does hereby acknowledge receipt and payment in full of any and all claims of any nature whatsoever in addition to those mentioned above now due or hereafter appearing to be due and owing by the aforesaid party to the Tulsa Interstate Petroleum Company.

"In witness whereof, said Tulsa Interstate Petroleum Company has caused this instrument to be filed by its proper officers this the 16th day of June, A. D. 1920.

"Tulsa Interstate Petroleum Company, R. J. Dickson, President. Fred H. Inman, Secretary."

The conclusions to be derived from the affidavit, resolution and written settlement, are that the Tulsa Interstate Petroleum Company knew of its claim of title to the very property involved in this action, and filed its claim of record thereto; that the title to his property was in dispute; that it voluntarily sought a settlement of all its differences with W. O. Allison, as shown by the call for a special meeting for the purpose of effecting a settlement and by the resolution, which recited that W. O. Allison was assigning to the company shares of stock in certain companies, oil and gas mining leases, and specially recited "other property standing in his name or in the name of others by, through or under him," and with full knowledge of its claim to the identical property involved here, standing in the name of Mary Edna Killion, it executed its release and satisfaction to the said W. O. Allison from "any personal liability or obligation of any kind whatsoever in favor of said Tulsa Interstate Petroleum Company," and especially acknowledged "that W. O. Allison has delivered and turned over to said Tulsa Interstate Petroleum Company, all property, effects and things of

value of every description whatsoever, which is the property of the said Tulsa Interstate Petroleum Company," and, in said release, for the consideration of having met the requirements of the resolution, recites that it "does hereby acknowledge receipt and payment in full of any and all claims of any nature whatsoever." Under this state of the record and under the general rule of law, the court will encourage compromises and settlements of matters in dispute, so as to avoid litigation, and where it appears, as in this case, that the said W. O. Allison was not, at the time of the settlement, occupying any official or trust relation to the company, he having been deposed as the president, manager and trustee of the company, eight days before the settlement, and the company with full knowledge of its claim to the title of the property, involved in this action, voluntarily sought, obtained and executed a settlement, under the terms and conditions appearing upon the face of this record, and accepting the benefits of said settlement and retaining the property assigned to it by Allison, it is not in a very favorable position to seek a rescission of said compromise and assert its claim to this property. We cannot agree with counsel that the question of whose money paid for the property involved here is vital in this case, in face of the settlement entered into in this case. The company knew it claimed the title to the property before the settlement was effected, its officers were in charge of the business of the company from and after the 8th day of June, at which time Allison was deposed, and R. J. Dickson succeeded to his position with the company, and had every opportunity to inform themselves, and should have informed themselves, of every fact in regard to the property involved here before making this settlement. We are of the opinion that, under the record here, there was no fraud practiced in bringing about the settlement on part of Allison and no failure to disclose to the company any facts, that it was not already in possession of, affecting this settlement made by him in regard to the differences between him and the company.

We are impelled to this conclusion by the fact that the title to this property stood in the name of Mary Edna Killion, when the affidavit of claim of title was made in which is contained a protest against W. O. Allison disposing of the property, and the conclusion, therefore, follows inevitably that the company knew that Allison was interested in the property and the sole and only way the company could have any interest

therein was that the property was purchased with the funds of the company. Then having arrived at this conclusion, the rule contended for by attorneys for plaintiff, that because of the trust relation theretofore existing between Allison and the company, he was compelled to make free and full disclosure to it, cannot have very great force, for the reason that he could give the company no further information than it already had. There is not and cannot, of course, be any deception or injury unless the opposing party is deceived, and it is not deceived when it knows the facts.

This court, in the recent case of Derdyn et ux. v. Low et al., 94 Okla. 41, 220 Pac. 945, in the 7th paragraph of the syllabus, said:

"Statements or misrepresentations between the parties having equal knowledge about the subject-matter will not constitute actionable fraud."

This court, in the case of Sango v. Parks, 44 Okla. 223, 143 Pac. 1158, also said:

"Voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge, concerning the circumstances involving these rights, and there is no fraud, misrepresentation concealment, or other misleading incident, a compromise into which they thus voluntarily enter must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision."

This court, in an unbroken line of decisions, has decided this question to the same effect in the cases of Harn v. Hare, 48 Okla. 3, 151 Pac. 615; Tracy v. Norvell, 81 Okla. 94, 196 Pac. 929 (opinion by Justice Nicholson); Wray v. Sumerset Oil Co., 89 Okla. 71, 213 Pac. 836 (opinion by Justice Kane); and Freeman v. Sullivan et al., 96 Okla. 220, 221 Pac. 460 (opinion by Justice McNeill).

We agree with the authorities cited by attorneys for plaintiff that a trustee must make a full disclosure, but there can be no necessity for one occupying a fiduciary relation to make a disclosure of facts that are already within the knowledge of the beneficiary.

Then, upon the whole record and the principles of law, as announced by this court, we are of the opinion that the judgment of the trial court was correct, and that the

same should be and it is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 12 C. J. p. 337. § 32; p. 340, § 35.  (2) 26 C. J. p. 1150 § 68.