MARKEL SERVICE, INC., Appellee,

v.

NATIONAL FARM LINES, Appellant.

No. 298–69.

United States Court of Appeals,
Tenth Circuit.

May 22, 1970.

Alex Cheek, Oklahoma City, Okl. (James H. Gray, William C. McAlister, Oklahoma City, Okl., and Lewis C. Merkel, Jr., Richmond, Va., with him on the brief) for plaintiff-appellee.

George L. Verity, Oklahoma City, Okl. (Lin Patterson, Oklahoma City, Okl., with him on the brief) for defendant-appellant.

Before BREITENSTEIN and HOLLOWAY, Circuit Judges, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

This is a diversity action in which Markel Service, Inc., an insurance agency, sued National Farm Lines, a trucking concern, for insurance premiums on policies arranged by it through a third party. Failure of the latter to remit funds entrusted to it for premium payments raised the question who should bear the loss as between the parties here.

The basic facts are these: Appellant National Farm Lines, Inc. contacted a Thomas R. Hardin Insurance Agency to obtain workmen's compensation, public liability, property damage and other types of coverage. The companies for which the Hardin agency regularly sold insurance refused the business due to appellant's high risk. The Hardin agency contacted appellee Markel Service, Inc., which was regularly engaged in locating high risk coverage for trucking concerns and which was successful in finding willing insurers. After making an initial deposit of some $30,000 with appellee to guarantee the payment of premiums, appellant through appellee obtained the desired insurance. Various amounts were remitted as premium payments both directly to the appellee and sometimes to the Hardin agency which would forward them to appellee. The Hardin agency wrongfully failed to remit $11,693.40 to the appellee which, having paid all premiums due to the insurers, sued appellant for reimbursement. The lower court determined that the default of the Hardin agency should fall on the insured, and awarded a money judgment to appellee in the amount of the unpaid premiums plus interest and attorneys' fees.

The appellant presents three questions on appeal, it being argued that a proper resolution of each requires reversal of the lower court judgment: 1) whether the Hardin agency was the agent of appellant or appellee for the purpose of receiving premium payments; 2) whether the insurance policies were issued in contravention of Oklahoma law by an unlicensed general agent (Markel) and, if so, whether the debt for premiums arising out of these policies is enforceable; 3) whether a certain payment made by the Markel agency to the appellant-insured, specifically a refund of the deposit premiums in the adjusted amount of approximately $27,000, without offsetting the sum here disputed, constituted under the circumstances an implied accord and satisfaction or a "voluntary payment" of a disputed debt so as to extinguish any claim for recovery of the amount paid. These issues and the pertinent facts bearing upon them are discussed in the order mentioned.

I

Appellant maintains that the lower court's finding that the Hardin agency was an agent of the insured for the purpose of the receipt and transfer of premium payments is erroneous both in fact and in law. We cannot agree.

The prior relationship between appellant and the Hardin agency, the manner in which the transaction developed and an express designation by the insured of Hardin as its agent indicate that the latter was agent of appellant. This result is not inconsistent with local law. *See* Insurance Co. of North America v. Burton, 147 Okl. 112, 294 P. 796, 798 (1930); Ivey v. Wood, 387 P.2d 621, 625 (Okl. 1963). *See also* Equity Mut. Ins. Co. v. General Casualty Co., 139 F.2d 723 (10th Cir. 1943); Spann v. Commercial Standard Ins. Co., 82 F.2d 593, 597 (8th Cir. 1936). The Oklahoma case law relating to a soliciting agent, if applicable to Hardin as argued by appellant, would make such person agent of the insurer, but would not define the scope of such agency nor preclude such person from acting as an agent of the insured in certain particulars in the proper case. *E. g.*, Home Insurance Co. of New York v. Southern Motor Coach Corp., 171 Okl. 94, 41 P.2d 870, 873 (1935); Georgia Home Insurance Co. of Columbus, Ga. v. Choctaw Cotton Oil Co., 153 Okl. 194, 5 P.2d 152, 154 (1931). *See also* Houston Fire & Cas. Ins. Co. v. Jones, 315 F.2d 116, 118 (10th Cir. 1963); McVay v. Mutual Ben. Health & Accident Ass'n., 26 F.Supp. 208 (D.Okl. 1939). The business relationships among the parties and the other circumstances surrounding appellant's choice to remit several of its premium payments to the Hardin agency rather than to appellee agency are sufficient evidence to sustain the lower court's finding that Hardin was an agent of the appellant in forwarding these amounts to the appellee.

## II

Appellant maintains that the Markel agency acted as general insurance agent in regard to the issuance of appellant's policies within the meaning of licensing provisions of the Oklahoma Insurance Code, 36 Okl. Statutes Ann. § 1307(A) (1958); that the Markel agency was not licensed as a general agent by the Oklahoma Insurance Commissioner; and that its activities in the absence of licensing constituted a misdemeanor. *See* 36 Okl. Statutes Ann. § 117 (1958). We do not reach the question whether Markel should have obtained the license because such failure in any event would not bar recovery here.

■ We find no Oklahoma authority that has interpreted legislative intent in regard to the pertinent licensing provision to bar recovery of amounts owing as insurance premiums under the circumstances of this case. At the time this action was commenced, the appellant had accepted all the benefits of coverage under the policies on which appellee asserts the amounts are owing. Both the insurance companies and a countersigning insurance agent on the policies were duly authorized to conduct insurance business in Oklahoma. Markel was domesticated and entitled to do business in Oklahoma even though not licensed as a general insurance agent with the Oklahoma Insurance Commissioner.

Under Oklahoma law the alleged violation of the licensing provision by appellee would at most render the policy voidable at the option of the appellant. In Winston-Norris Co. v. King, 119 Okl. 109, 249 P. 319, 320 (1926), the Oklahoma Supreme Court held that failure of a foreign insurance company to comply with a statute in order to entitle it to do business in Oklahoma did not render the policy void, and that such policy was enforceable by the insured against the insurance company on the theory that the statute was for his benefit and he was not in pari delicto with the insurance company. *Accord*, Houston Fire & Casualty Ins. Co. v. Jones, 315 F.2d 116 (10th Cir. 1963). A logical extension of *Winston-Norris Co.* is that premium liability, though once avoidable at the option of the insured, becomes enforceable when the insured chooses to accept, and also retains benefits under the policy, as appellant in this case has done. *See* 19 J. Appleman, Insurance Law and Practice § 10533, at 222 n.19 (1946). An Oklahoma statute specifically bars recovery of real estate commissions by unlicensed brokers, and the cases de-

cided under this statute which are relied upon by appellant are thus distinguishable. *E. g.*, Ratcliff v. Cobb, 439 P.2d 194 (Okl. 1968); Jones v. Major, 317 P.2d 190 (Okl. 1957).

### III

Appellant asserts as an affirmative defense that there existed between itself and appellee an implied accord and satisfaction as to the debt which is the subject matter of this dispute, or alternatively that the Markel agency with full knowledge of the facts surrounding the disputed debt made a voluntary payment which bars the present action. The lower court found that the evidence did not establish an accord and satisfaction or an estoppel operating in favor of appellant. The circumstances upon which appellant bases his contentions are as follows:

While the Hardin agency was acting on behalf of the appellant, as noted before, approximately $30,000 was deposited with the Markel agency to guarantee the appellant's premium payments on policies which were issued shortly after the deposit was made. Later the policies were canceled by the appellant because it no longer desired to favor the Hardin agency with its business, and appellant directed Markel to deal through the Coop Farmland Insurance Agency, Inc. Renewal policies through the Markel and Coop agencies were then issued, and Markel transferred the appellant's deposit premiums from the original policies account to the renewal policies account. It appears that prior to this accounting entry the Markel agency requested appellant's permission to deduct the earned but unpaid premiums of approximately $11,000; the insured, however, refused to allow the offset and Markel made the accounting entry in the full amount of the insured's deposit premiums.

Appellant remitted the premiums due on the renewal policies, which in effect amounted to an overpayment in view of the premium deposit. The Markel agency notified Coop of this overpayment, and again requested permission to deduct the $11,000. On behalf of the appellant, Coop responded that appellant should not be penalized for Hardin's misconduct and, after some exchange of accounting information, further advised appellee by letter that it would institute court action if a full refund did not follow. In the same letter Coop expressed its understanding that if full payment were made the insured would execute a subrogation agreement concerning its claim against the former agent. Without further communication, except for the telephone conversation which is noted below, the Markel agency mailed a check for the adjusted amount of $27,000, representing a full refund without offset of the disputed $11,000.

Oklahoma recognizes the general principle that money voluntarily paid on a debt with full knowledge of the facts under which it was demanded cannot be recovered. *E. g.*, L. E. Smith Const. Co. v. Bearden Plumbing & Heating Co., 372 P.2d 229 (Okl. 1962); Tulsa Interstate Petroleum v. Allison, 112 Okl. 47, 239 P. 633 (1925). We believe that under the above facts the refund of deposit premiums would constitute a voluntary payment extinguishing the disputed debt unless it was shown that prior to the refund the parties in some form expressly agreed upon the return of deposit premiums to suspend the question of liability and to resolve the question by a subsequent means such as resort to the courts.

Appellee asserts that such an express understanding between the parties arose out of a telephone conversation between Lewis C. Markel, Jr., an officer of appellee, and Mr. Olmstead, an officer of appellant. A memorandum from Markel's file purports to set forth the substance of the telephone conversation:

Memo to File November 1, 1967 re; National Farmlines and/or Hardin Agency.

We spoke to Mr. Olmstead at Farmland Industries in Kansas City, telephone area code 816—GL3–1400, this

afternoon, the 31st, and he was most delighted that Markel Service was returning the money.

He understood thoroughly that we would sue National Farm Lines and that he would interplead Tom Hardin as a defense. He recommended we sue in Oklahoma as National Farm Lines is licensed in Oklahoma.

He further stated that Tom Hardin had several claims against other insurance companies and therefore, quite possibly there would be a source of funds available should we reach decision.

Respectfully,

Lewis C. Markel, Jr.

LCM:JF

Although the substance of the telephone conversation is sufficient evidence upon which the lower court's finding could be sustained, the memorandum itself which is the principal evidence of what was said is of questionable admissibility.

Appellee introduced the memorandum along with a certain summary of deposit premiums during the deposition of L. C. Markel, Jr. on direct examination:

Q. Plaintiff Exhibit No. 12 indicates a conversation between you and Mr. Olmstead: Please tell us who he is?

A. At that time I understand that he was an officer and attorney for National Farm Lines. It was expressed to me as counsel.

Q. Was this notation of your conversation, Plaintiff Exhibit No. 12, a summary you did as to the deposit premiums?

Mr. Verity (appellant's attorney): We object to that as leading.

A. Yes indeed.

Mr. Verity: We further object in that it is nothing but a hearsay statement and self-serving declaration, both as to the response to the question and as to the exhibit referred to.

No further foundation for the memorandum was laid. On cross examination during the deposition, appellant inquired by reference to the substance of the phone conversation as follows:

Q. Mr. Olmstead [in the telephone conversation] confirmed the statement in that letter, did he?

A. No sir, he took a more affirmative stand and advised me how to proceed against Mr. Hardin.

Q. To collect your money?

A. And I am merely following his advice.

Q. And as a result of this letter, which is Plaintiff Exhibit No. 11, which threatened to sue you, your company paid them?

A. No sir.

Q. You issued a check, which you introduced as Plaintiff Exhibit No. 13?

A. Yes sir.

Q. And that returned the premium to that company, did it not?

A. I think it would be difficult to say that was as a result of that letter, because I don't think they could have sued us and accomplished anything more and obviously it cost us less than it is costing us now.

Q. The letter was dated October 24, 1967 about returning the premium?

A. Yes sir.

Q. And the check was dated November 10, 1967?

A. And I call your attention to my conversation with Mr. Olmstead on November 1, 1967. The exhibit is on file.

At trial appellant objected to the introduction of the memorandum in the following terms:

The Court: Does either party object to the depositions and the exhibits offered in evidence in the depositions?

Mr. Verity (appellant's attorney): We object to parts of it, your Honor.

The Court: What part do you object to?

Mr. Verity: I object to two memorandums which are self serving declarations.

**1128**

The Court: Well, just mark them. You object to them. You object to them as being incompetent, irrelevant and immaterial.

Mr. Verity: That's correct, your Honor.

The Court: You don't deny the memorandum itself.

Mr. Verity: I don't deny that it was offered as being a memorandum that Mr. Markel made for himself.

The trial judge then received the memorandum in evidence "for what it is worth," and also received the deposition.

■■ The offer of the memorandum as evidence suffers from an obvious lack of proper foundation, but appellant's general objections to the memorandum as "self serving" and "incompetent, irrelevant and immaterial" were insufficient to make the trial judge fairly aware of any foundational infirmities that had arisen during the deposition and upon which reliance was had at the trial. Evidence of the conversation in question was not subject to the specific objection that it was "self serving". The general objections did not appropriately raise lack of proper foundation for past memory stated or the hearsay objection. *See* 1 J. Wigmore, Evidence § 18(c) (1), at 332–33 (3d ed. 1940). A specific objection overruled protects the record to the extent of the ground specified, but does not avail the party of other grounds that could have been raised. Frates v. Eastman, 57 F.2d 522 (10th Cir. 1932); 1 J.Wigmore, § 18, n.27.

Other circumstances convince us that the trial judge could properly consider the memorandum. During the deposition appellant's questions, as are set out above, assumed by reference what the substance of the telephone conversation had been, and by such reference he elicited answers from Mr. Markel that have a completely opposite meaning if taken out of the context of the substance of the telephone conversation as reflected only in the memorandum. The examiner thereupon brought out a further explanatory statement indicating that the memorandum was of the conversation as to which inquiry had been made in the cross examination.

■ Even though appellee's witness had used the memorandum to refresh his recollection during the deposition, this of itself would not validate its admission. The rule is that the party whose witness has so used a document does not have the right to treat the document as evidence, but his opponent may do so. Portman v. American Home Products Corp., 201 F.2d 847, 850 (2d Cir. 1953); 3 J. Wigmore, *supra*, § 763. As a corollary it has been held by the Second Circuit that such a statement may be rendered admissible through cross examination by the opponent. United States v. Rappy, 157 F.2d 964, 967–68 (2d Cir. 1946), cert. denied, 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688 (1947). In the case at bar the trial judge could in his discretion have properly considered, and we have no reason to suppose that he did not consider, the memorandum as incorporated into the testimony elicited in appellant's cross examination of Markel to the extent that it was necessary to understand this testimony. Thus, there is substantial evidence negating the application of the voluntary payment rule.

■ As to the lack of accord and satisfaction, the evidence presented a similar factual question; and the lower court's determination was not inconsistent with either the evidence or the controlling law. Commercial Union Assurance Co. v. Creek Cotton Oil Co., 96 Okl. 189, 221 P. 499, 501–502 (1923); Metropolitan Life Ins. Co. v. Richter, 173 Okl. 489, 49 P.2d 94 (Okl. 1935). *See also* United States for Use of Glickfeld v. Krendel, 136 F.Supp. 276, 282 (D.N.J. 1955); Dillman v. Massey Ferguson, Inc., 13 Utah 2d 142, 369 P.2d 296, 298 (1962). *See generally* Walker v. Ellinghausen, 309 P.2d 1058 (Okl. 1957).

Affirmed.